Good morning. May it please the court, my name is Christopher Brown on behalf of the estate of Wayne Jones on this appeal from the grant of summary judgment in his suit, its suit against the City of Martinsburg and several individual police officers. Three years ago on March 13th, Wayne Jones was walking down the street allegedly in violation of the municipal code and the result was he was fatally shot 22 times by members of the Martinsburg Police Department. When the story begins and ends with those two statements, it initially raises concerns. All too often the initial response tends to be, what did he do? On behalf of Robert Jones and Bruce Jones, the administrators of the estate and brothers of Mr. Jones, they want to change that narrative. They want that question to be, what is the deficiency in the training of officers that's allowing this to occur? So they filed suit in June of that year for 1983 and some other claims against the city and the individual officers. Summary judgment was granted and we feel that it's fairly clear that there's a recent Supreme Court decision, Tolan v. Cotton, 134, Supreme Court, 1861, 2014. And in that case, the Supreme Court granted certiorari and issued a decision in the summary judgment case because the lower court had, quote, failed to credit evidence that contradicted some of its key factual conclusions and improperly weighed the evidence and resolved disputed issues in favor of the moving party. Normally in these cases, we are stuck with the testimony of witnesses, but with the advent of technology, we have dash cams. And those dash cams showed a large portion of the event that occurred when Mr. Jones was fatally shot. Unfortunately, request for admissions were served on December 23rd. I felt that counsel, Mr. Lambert, made a very, very reasonable argument that I didn't receive them until two days later than the date I would be deemed to have received them under the rules and asked that they be allowed. He raised in his motion, I think in contrary to the position of the appellees, he did raise some of the factors that needed to be considered. And the court, the magistrate judge deemed the request for admissions admitted. That's nothing new. It happens when the responses aren't provided timely. But nonetheless, when those admissions- if the rules say 30 days from upon receipt, if he received them on January 2nd and calculated the 30 days, I think that should have stopped. I understand that there can be issues and we're going to add three days for U.S. mail, but I think that's to cover up when someone says, well, I didn't get them or I have no evidence that they were received. But here he was presenting evidence of when they were in fact received. And I will concede I was surprised that that alone didn't carry the day for him on allowing him to have his admissions accepted at a time. But he didn't file a motion requesting that the magistrate judge allow the estate to withdraw or amend. He did not. And the case law from this court and other district courts is clear that filing the responses can be deemed a motion. Requesting or just opposing the motion to deem them admitted could be considered a motion to accept them out of time. I'm confident that that part of the case law, Judge Duncan, is fairly clear. And when he provides those responses and he opposes their second motion to deem the request for admissions admitted, at that point the court has a burden. The court has a burden to deem that a motion to withdraw the admissions deemed admitted and determine whether or not it would allow the case to go forward on the merits if you grant this request. And what if any prejudice there is to the requesting party, the party that requested the admissions. This court has reviewed, there was a case out of the Eastern District of New York. In that case, the court went through the Eighth Circuit opinion in Gutting, the Second Circuit opinion in Moosman, the Ninth Circuit opinion in French. And it had to do with the presentation of some financial records. And Judge Gutierrez held the burden, given the scope of the case, would have been fairly great on the requesting party to prove these facts. Were the other party allowed to withdraw the admissions? And this court held the prejudice, while it was not great, it was sufficient to support the district court's rejection of the untimely responses. And I respectfully submit, we don't even have a prejudice that's not that great in this case. We're talking about two days late. You don't have any prejudice in this case, do you? To the appellees that had the withdrawal been allowed. No prejudice. Nine months left in discovery. They were filed on what day, January 27th, 28th, 9th? They were filed two days after the first motion was filed. And they were served two days before Christmas. They were served two days before Christmas. And in this case, there's no analysis as to whether or not there was prejudice or any considerations under the 36B. Which is reversible error. Right, correct? That is correct, Judge Gregory. To fail to consider the 36B factors. But just so I understand, why would that be? In order to get to that, there would have to be some notice to the magistrate judge. Wouldn't you have some obligation to put that in issue? So my question is, you're saying that a discussion before the magistrate judge was enough to put that in play? That is correct. Even though that no motion was filed? The opposition to the second motion to deem the request for admissions admitted was sufficient to establish that the state was moving to withdraw the admissions deemed. As a matter of fact, the state specifically said it would be contrary to the purpose of the statute. Did it not? It would. And contrary to the purpose of the rules of the state. And that would have to go beyond just counting days, wouldn't it? It absolutely would, Your Honor. The ultimate intent of the federal rules is to do justice. The request for admissions, the purpose of them is to alleviate a party of the burden of proving facts that are really uncontested. So that they don't have to come in with custodians and etc. When you have facts that are clearly the heart of the case, it cannot be argued that these facts were not disputed. That Mr. Jones had a gun, that he tried to stab a police officer, that he refused to drop the knife. As a matter of fact, the admissions are kind of interesting because the state, the decedent, he's dead. So they would be in the best position to say whether or not he had a knife, wouldn't they? In terms of admissions. Yes, they would. And it's just interesting. I mean, that's the irony of it, in the sense of what you're being asked to admit, you'd be the, the defendants would be the ones who would know best. Because he's obviously, Mr. Jones is dead. Well, the city of Martinsburg and the officers, they're not going to contest the fact that no knife was ever recovered. Yes, that's what I find to be interesting too. They never found any knife on this man. And there was testimony that a knife fell out of one of the officer's pockets. Well, I looked at the video several times and what was said, I think just before they shot him, was that, drop the knife, drop the knife. It's in your hand. And then I heard other conversations afterwards and they talked about it was in his hand. But anyway. In reading the memorandum of opinion, 12, page 12 to 13 of Judge Groh's memorandum of opinion, she goes through, well, let's look at the facts of this case. It really states three things, all based on the request for admissions. And looking at that video, I just found it incredibly difficult to understand how one can allege that he was resisting arrest, a threat to the lives of the officers and refusing to put down a knife when he'd been tased three times and he appeared to be face down on the pavement. I was unclear how... But didn't the video show there were like five officers on top of him? That is correct. Yeah. Yes, that is correct. Then I could hear the sounds of him being choked. He was put in a place in a chokehold, tased a third time. And we'll get to whether or not there was excessive force and unreasonable behavior on the part of the officers. But at this point, I think it's fairly clear that we can say there was no reasonable reliance by the appellees on these admissions. It was a gotcha game, respectfully. They couldn't reasonably rely on the fact that the estate admitted he had a knife. He stabbed an officer and he refused to put down the knife and follow up on it. There was no... The city of Martinsburg and the officers involved cannot, with good faith, say we reasonably relied upon those. And they affected their course of litigation in any way following that. There was nine months left in discovery. They hadn't foregone any discovery. They want to say they relied on it for their summary judgment motion, which some of the case law discusses, but that alone won't be enough. In cases that have discussed when there was prejudice, they all involve the answers coming in a month, two months late, discovery being closed, dispositive motions deadlines having passed, etc. And we don't have any of those factors here in this case. We don't. Looking also at precision franchising, which cites the Adventist opinion, the first factor that it would help promote the presentation of the merits. Courts have found that this problem is met when the deemed admissions effectively resolve the case and thus upholding the admissions would eliminate any need for a presentation on the merits. We clearly have that here. Could I just... Yes, Your Honor. There are actually two threshold issues here to overcome before getting to the merits. One is the failure to move to have the admissions withdrawn. But the other is also that the estate failed to challenge the magistrate judge's order in the district court. Did it not? That is correct. And that's, it's pretty clear under our precedent that that is a condition proceeding to appeal, is it not? Well, my understanding is of the reading of 72A and when you have a dispositive issue that the district court, when presented with those facts in ruling on summary judgment, had an obligation to make his own determination on whether or not it was appropriate to accept those facts as deemed admitted. I'm sorry, I'm talking about once we have the magistrate judge's order. Yes. It becomes a recommendation and I believe there is two weeks to notice an objection to the magistrate judge's findings. I understand. So getting beyond the admissions, I'm talking about the magistrate judge's order. Well, Justice Duncan, in this case, the magistrate judge... Thank you for the elevation. You can The court, the magistrate judge did not issue a report and recommendation, which is what should have happened because this was a dispositive issue. But they issued an order. An order. And the order, the rules do allow for an objection to the order. But if it's a dispositive issue, the district court still has an obligation to review the 36B factors. Okay. Isn't that not the case when the individual is uncounseled? Is that true in a counseled appeal as well? Well, you know, looking at, it's an unpublished opinion and looking at the, is it Bailey versus Christian Broadcasting Network? This court held, although the district court was required to correct the magistrate judge's ruling, if it found the ruling clearly erroneous or contrary to the law, the court accepted them summarily and without further explanation. Okay. That's it. Okay. My question though, is with respect to the action that was taken after the magistrate judge completed its... Bailey was pro se, if that's what your honor is getting at. Okay. He was pro se, but the opinion doesn't suggest a reliance upon that when it discusses the non-dispositive nature of the deemed admissions that come before the district court in ruling on summary judgment. So when Judge Grove was reviewing summary judgment and saw that there was a request for admissions deemed admitted, she had an independent obligation to review that to determine whether or not that was in the interest of justice in the presentation of the merits of the case and whether there was any prejudice to the city and the officers had they been allowed. But haven't we held that failure to object to a magistrate judge's decision waives the right to challenge an issue on appeal fairly regularly? It does, particularly when you're moving under 72B for non-dispositive issues. With respect to a dispositive issue, given magistrate judges are creatures of statute, they get their authority from statute, they don't have the authority to accept the magistrate judge's determination that was dispositive of the case. The waiver doesn't extend the magistrate's power. That's correct, your honor. But 72B said even on dispositive notions, within 14 days after being served, a party may file and serve specific objections. There's still a mechanism for objections, but there's a distinction between waiver and forfeiture. And in this case, given the magistrate judge's authority, limited authority, and I'd like to reserve the rest of my time for rebuttal. Thank you, Mr. Brown. Thank you. Saverin. Thank you. May it please the court, my name is Philip Saverin and I represent the appellees in this case, both the city of Martinsburg and the police officers. I wanted to perhaps quickly address our position on the request to admit. We believe that the issue has not been preserved for review. Rule 72 is quite clear in that respect, that failure to object to the magistrate's order does not allow further review. And the reason for that, that the Supreme Court stated in Thomas v. Arnn, is that the district court supervises the magistrates, and then the appellate courts review the district court's decisions. So that if the litigants have an objection to a magistrate's ruling, it is incumbent upon the litigant to then raise that objection with the district court so that that issue can be then preserved as far as the district judge's ruling for purposes of the appeal. And the contention by the appellant in this case that is incumbent on the district court to go back and see whether or not the magistrate correctly ruled is not, is inconsistent with both Rule 72 as well as the case law construing Rule 72. To the extent that the appellant contends that the request to admit being deemed admit was a dispositive issue that should have been considered by the district court and not the magistrate judge. We disagree with that, first of all. We believe that dispositive issues are such things as motions to dismiss, motions for summary judgment, as opposed to discovery rulings that may form ultimately part of a dispositive issue. But to the extent that the court, or to the extent that the appellant argues that the magistrate judge ruled on a dispositive issue, that too was not preserved in the district court because we believe it would have been appellant's obligation to advise the magistrate judge that this was a, or to advise the district judge, I'm sorry, that the magistrate judge had ruled on a dispositive issue and asked the district judge to rule on it instead. And your authority for the proposition, well, counsel for the estate argues that it makes a difference, that the distinction between dispositive and non-dispositive motion controls. And can you sort of encapsulate your response to that in your authority for it? And also the case that was, that counsel cited, which I think involved a pro se appellant? Well, what I would say, your honor, is that the, the, I think I would rely on the, on the case law in our response in terms of types of orders that are non-dispositive and types of motions that are dispositive. And I think that something along the lines of whether or not a response was filed timely would be, would fall in the nature of the non-dispositive based on the fact that that does not dispose of the case. Now, anytime that there's a ruling on a discovery issue, it very well may become part of a summary judgment motion. The fact that it may become an important part of it does not in and of itself mean that the ruling that the response was untimely is therefore converted into a dispositive ruling. Are you saying this court doesn't have the power to review that in plain air, on the plain air? We can review on plain air when you don't even raise the issue at the district court level. And you raise it here for the first time in the court here. You say we don't have the power to review this on the plain air? Our position, your honor, would be that the district court was not given an opportunity to rule on the... No, no, you're not answering my question. Are you saying we don't have the power to review this issue on the plain air? I understand the court's question. Well, if you answered that. Well, my response to that is that the district court did not commit error. Perhaps the magistrate court did. That's the distinction that I'm drawing. I know that's your position. I understand it. Okay. The question is can we review it for plain error? That's not... I know that I don't want you to concede anything as to whether it was right or wrong. Question is power. Are you saying we don't have the power to review that on the plain air? To review the magistrate's ruling? To review the fact that allowed admissions when they've never considered the 36B type considerations of prejudice and impact and all of that? Nothing other than just counting days is the only... Can we review that on the plain air? Even if it was not properly raised? Our position in the circumstances of this case is that no, that would not... Oh, we don't have the power. Okay, good. But I couldn't... That's because of the circumstances of this case, not in other circumstances. Excuse me. Is the question power or, and this is my confusion, or jurisdiction? Do you understand what I'm saying? I do. I do. And I think that's probably a better articulation or perhaps a closer articulation of our position that this court would be then reviewing the magistrate's ruling as opposed to an error that was allegedly committed by the district court because it was not put before the district court for review. In this case, it would be dispositive. Clearly. Let me... Matter of fact, I look at your arguments, the arguments you made for the magistrate judge you were talking about. That could be raised in terms of summary judgment, in terms of those questions. It is dispositive. Let me address a couple of issues on that, if I could, because I'd like to address, if I could get to the merits, because my, ultimately, I believe that there's no disputed facts in this case in terms of whether or not the officers reasonably believed that Mr. Jones had a knife and would not put it down. And the reason I say that, your honor, is because even taking out the admissions, if we set them aside, the videotape is very clear that the officers believed that he had a knife. One officer, I think it was officer Stott, we figured out, said he's got a knife. Four of the officers said they saw the knife. They jumped back and said, get back, get back, he's got a knife, drop the knife, drop the knife. So I think it's undisputed, at least, that the officers believed that he had a knife and that he was not putting it down. Contrary to what the appellant represented, there is, in fact, evidence in the record of a knife. This was perhaps not brought out in some of the proceedings as much as it might have been because of the admission. But I would point the court to, in the report by the city of Martinsburg, indicates that a knife was found in the suspect's hand by the West Virginia State Police. Also that officer Staub had a chest wound and his uniform and vest were cut, and that's a document 125 in the district court, 125-8. Who's the author of that report? That was by the city of Martinsburg. The city of Martinsburg, they weren't there. The city of Martinsburg is reporting on the West Virginia State Police investigation. The West Virginia State Police, they weren't there either? The State Police investigated it afterwards. What difference does it make? What I want to say is this, you have five officers that were literally one inch from him or less on top of him, right? Yes. On top of him, laying on top of him. Most of the shots were in his buttocks, back, and that's it. He's on the ground. Five people are on him. He has a knife in his hand. They shoot him. Where did the knife go to? The knife was found by the West Virginia State Police that investigated the incident afterwards. What about the police officer? They were right there, the five people who shot him. The knife was in his hand, Your Honor. Didn't the West Virginia State Police, and correct me if I'm wrong, I have a question about this, it was admitted into evidence as I understand it, but it wasn't produced in the district court, perhaps because that fact was deemed admitted. However, there also is a reference to it in the expert report by the plaintiff's expert referring to the knife having been found by the West Virginia State Police, and that's the Joint Appendix, page 485. So you're saying that you relied on the admissions instead of producing the weapon? Relied on the admissions as well as the testimony of the officers. The importance of the evidence, Your Honor, is that the question is whether or not the officers reasonably believed that he had a knife and was not putting it down when he was commanded to do so. The law in this circuit is well established that if an officer is, if a suspect has a weapon and refuses to put it down when commanded to do so, that deadly force is authorized. Here, the officers clearly reasonably believed that he had a knife. There's testimony that he was getting up. That is undisputed. There's no evidence that he was not, did not have a knife or did not, was not moving. Wouldn't it have made sense to produce it just to take the question out of play? Well, I guess that's 20-20 hindsight. And it would have been additional cumulative evidence. It would not have been cumulative because the issue is that the physical evidence. What you're saying is, you're saying that basically the argument is this. It doesn't matter whether there was a knife or not as long as they reasonably thought it was a knife. That's what you're saying. But those are different type cases. Those are cases where the person is some distance and they wheel around and what it turns out to be a cigarette lighter or stick of gum and then they say, well, we thought it was. This is a different case. They're literally on top of him, back away. And then the credibility comes here. They said that I heard it too. Drop the knife, drop the knife. But there was no knife. So that raises the question of whether or not in fact there ever was a knife or whether they even thought he had a knife. That's credibility. That's a factual question. The question is not whether he in fact had a knife, but whether or not they reasonably believed he had a knife. I'm sorry. I understand it. But under these circumstances, you would have to be bereft of common sense to say that five people are on top of you and they're right there with you and they say it's in your hand. I can't imagine why he was being choked what the other four were doing. If he was being choked, that's undisputed. I think it was a fact. He's on the ground. What are the other four doing? Waiting to see who's going to win the battle? No, they're on top of him. And then you say he has a knife, but no knife is produced. That raises a serious credibility question whether or not it was correct when they were saying he has a knife, he has a knife. That's what Judge Dunford was asking. Wouldn't it have been better? Yes, it would have been if that was the fact of it, was there was a knife. It seems like there's a knife because I heard them say, well, there's shells all around, right? You can hear him talking about the shells, the cases, and they're right there. But you don't just say, they don't bag it up as evidence. I mean, that would be the most important thing I'd be concerned with. If I was a police officer and shot somebody 22 times, I'd be like, wait a minute, he had a knife. He's like, don't touch it. But the officer's entitled that day in court on the merits. But that raises some credibility question, doesn't it? Officer was stabbed, Judge Gregory. It was stabbed. Judge Staub was stabbed. Did you introduce the shirt? I'm sorry? Was the shirt introduced? Yes or no? There's evidence. Was that in evidence? Was it put in evidence? I guess if you stabbed through your shirt, it'd be torn. Was that in evidence? There's evidence that his shirt was torn. I guess I'm having a hard time. Maybe I speak another language. I'm sorry? That you put the shirt into evidence. I was not the attorney for this report, but I have not seen that, so I do not believe so. But wouldn't that be important if you have a torn shirt that would corroborate that you were stabbed? I believe that that would corroborate it, but I don't see any evidence in this case. I have not seen any evidence in this case that he did not have a knife, that the officer was not stabbed. In fairness, though, there are photos in the record. Yes, there are photos in the record. Yes. Of the cut. Yes, there are. Yes, thank you, Your Honor. There are photos of the cut. Yes, to Officer Staub. Yes. Any blood on those? Any DNA? I don't believe it was a deep cut, Your Honor, but a knife is a deadly weapon. A knife can inflict death or rape bodily harm. No argument there. And the officers are not required to put their lives in danger because they're in a situation that is rapidly evolving. I agree with you 100 percent. I'm not talking about it at all. I'm talking about where is the knife? With five officers right around him. Where is it? Why was it not put into evidence? The evidence is, there is that evidence, Your Honor, and if this court were to find that the admissions must be set aside, then I think that in fairness the defense should be able to present the evidence without the admissions for the district court to decide that issue anew. Just to clarify, at least as I understood from the record and the investigation report, noted that it was admitted into evidence, it simply wasn't produced in the district court. Am I wrong? I mean, is that not correct? Never mind. I'm sorry. I don't have the answer to that question right now. You know, it's another thing, to get back to admissions, I'm pretty old, but when I practice law, it's pretty rare that somebody serve you two days before Christmas, the holidays, and then in a case this important, and you know in terms of our nation, these cases, it's quite a serious question has been raised about them, and they're two days late over the holidays, and you deem them admitted? I mean, that would be just unthinkable. I mean, as a matter of fact, you file your motion the day they were due. I mean, honestly, how is that? I just don't understand. I'm a dinosaur. People would say there's the holidays, I'll get to it, okay, two days, but I guess now it's different. Before they even do, you rush down to the court, but I'm not saying, but is that, maybe that's the way practice is now. I don't know. Your Honor, I was not involved in the case at that point. I cannot speak to that, but what I can say is that obviously the court understands our position about the preservation, but apart from that, what I'm saying is that even without the admissions, you look at the videotape, and with due respect, Your Honor, I believe that what you see is officers trying to subdue someone who's resisting arrest, has a weapon. I believe the case law is clear that when an officer is confronted with a suspect who has a weapon and refusing to put it down, then deadly force is authorized, and what we cannot do, and I think what the cases are very clear that the court should not do is sit back and second guess and say, could have they done this, could have they done that. The question is from the perspective of the officer on the scene at the time the force was used. You have someone who the officer is saying he's got a knife. Four officers say we have a knife. He's not putting it down. As far as the gunshots are concerned, there were five shots to the very, just to the left of midline on the chest. So it corroborates what the officers were saying, that he was on his side facing them, waving the knife. I think under those situations that the officers are allowed to make judgments that may be mistaken, but that does not violate the Fourth Amendment, and certainly we have not found any case law that says that where you reasonably believe a suspect is armed and is not putting it down, then deadly force is not authorized unless there's a point in time where the threat has clearly passed, and if deadly force is still used after the threat has clearly passed, then that could be a violation of the Fourth Amendment. We don't have that here. Well, didn't Officer North say some question about whether or not there was a threat at the time, his testimony? Officer North was the one officer that said he did not see a knife. He heard the others say there was a knife, but what he was saying is he was relying on what the other officers were saying, that he's got a knife and he wasn't putting it down. That was what Officer North was saying. Wasn't Officer North one of the first ones who cornered him? Officer North, if I'm not mistaken, came, he was the second one on the scene, and then Mr. Jones ran down the block and Mr. North then took chase. That's what I'm saying. But at that point, he did not... I'm sorry. No, that's what I said. He was the first to corner him. But at that point, Officer North did not know that he had a knife. It was at the point that an officer said he's got a knife, get back. At that point, the shots lasted for about three seconds. They gave him nine seconds, which is a significant period of time in these kinds of drop the knife. The gunshots, there were many of them, but they were rapid succession. It was not a situation in other cases where the suspect said, I've dropped the knife, or he dropped the knife, or they shoot when the fellow's driving away or something. Help me with this. I know this difficult case. The scene where you look at it, you see it, talk about where he's on the ground. I'm just telling you, it's disputed, you tell me, but he's on the ground. Five officers, five armed officers are literally on him, not standing around him, but literally on him, right? Now, they say, at that point, he has a knife in his hand. They didn't say once they released him, he got a knife in his hand. They said, but if you're on the ground, you're holding them down, five people, and he has a knife in his hand, why would you back away and say drop the knife? Wouldn't it be more likely to get stabbed, especially out of the hand? You already have him down. Why wouldn't you hold him down? You let him go so he could swing at you while you're because their weapons weren't drawn. They backed up, and then they shot, but between the backup he had in his hand, he could have stabbed him. Why wouldn't you just hold him? It just seemed like that's inconsistent with the fact of five people on top of you, and you have a knife. You got a knife. I'm on top of you. I'm not going to let your hand go. I'm going to keep it pressed on the side. I'm not going to let that hand go, back up, and then shoot you or tell you to put it down. No, I'm not worried about you put it down. You're not going to be able to move your hand because five of us are on top of you. I just can't understand that. I'm over time. I know you are, but I'm the lead judge. You're okay. Okay. Go ahead. May I respond to that? Yeah. My response to that, your honor, is that he wasn't stationary. He was moving around. He was resisting arrest. If you are in close proximity to someone with a knife, you are in more danger of being hurt and stabbed than if you put distance between yourself. It doesn't take very long for someone to lunge with a knife and cause great bodily harm. Now, the question is, I think, was he, did he have a knife? Was he threatening to use it? Was he refusing to put it down? He was getting up. That's the undisputed testimony in this case. Once you're up, it's too late. Once you're up, you can lunge very easily. We see this every day in different parts of the world where there are stabbings on the street. Knives are very dangerous. And whether or not the officers had a reasonable belief that he had a knife and was not putting it down is, we believe, is dispositive in this case. And in fact, I believe that that's what the appellant is saying by claiming that the requests were dispositive issues. I think that this is, at worst, in the hazy border between excessive and reasonable force where the court should not be enshrining Fourth Amendment jurisprudence into police policy under facts that are divergent. The Constitution said you have an obligation not to enshrine, but to review it. I understand. It's not a constitutional principle. I understand. And our point is, my point on this one, Your Honor, is that if it's in that hazy border between excessive and reasonable force, then the benefit goes to the officer on the scene who has to make split-second decisions in rapidly evolving circumstances that are fraught with danger. And this gets to whether or not there was a Fourth Amendment violation. It, of course, does not get to the question of whether it was clearly established and qualified immunity, which still remains to be involved in this case. But our position is, at least at this juncture, where the court has decided that there was no Fourth Amendment violation as a matter of law, that that should be affirmed because it's undisputed that he, at least we contend, that it's undisputed that he had a knife, that he was refusing to put it down despite commands to do that, and that because of that, the precedent says that deadly force is authorized. That's our response to the court's concern. Thank you, counsel. Thank you very much. Mr. Brown, you have reserved some time. Thank you, Justice Gregory. I want to start off by saying or addressing Justice Gregory's inquiry about the court's authority. This court in TFWS 572 F3rd 186, Fourth Circuit 2009, this was discussing non-dispositive rulings, and this court held it absolutely had the right to review a matter brought up in the first instance on appeal under three exceptions, one of those exceptions being the prior decision was clearly erroneous and would work a manifest injustice. I thought so, too. Very clear. And the court is also, that is consistent with the Supreme Court in Thomas v. Arnn 474 U.S. 140, 1985. The loss of the right to any Article III review through failure to object to a magistrate judge's report and recommendations merely constituted a non-jurisdictional procedural default. With respect to the joint appendix of 485, I am not, when counsel made that representation, I'm not saying he made it, what the situation is, but that report from the plaintiff's expert does not support the representation made. I'd ask the court to review 484 to 485, where it starts on the heading, the knife. And he's reviewing the different testimony, and he is clearly, I think, leading us towards what Justice Greger says, the credibility of the officers. Eventually, at the end of the whole section, he says, I can't resolve these discrepancies. One officer said it was tucked in the knife, one officer said it was kicked away. He reports that it was reported that two knives were recovered, but no knives are produced. Conceded one of the knives belonged to Officer Stahl. It was Officer Lehman, who was the first on the scene, who was most familiar with this gentleman, most familiar with the circumstances upon which they came into contact with him. And he's the one that unloads all eight bullets out of his magazine. For the ones who show up later, concerned about their fellow officers, that's a different question. Officer Lehman was the first one there, and this notion, and I don't want to harp too much on Justice Greger, I'm watching this video myself, and I'm thinking to myself, at what point are they afraid that he's going to threaten their lives or serious bodily injury? Well, the approaching officer asked the deceased if he had a weapon, had a contraband, something to that effect. He answered in the affirmative, did he not? Apparently, he said, what's a weapon? And apparently, they found some scissors on him. And there was a knife that was studied for blood, and that was negative, but there was a knife that they were dealing with. Yes, there was. That's not a figment of somebody's imagination if they tested it, is there? Well, it is referred to in the police report. But where did it come from? Exactly. When we talk about evidence, what appeals court of record? I was simply asking about the existence of a knife. It's not in the record of existence. There's no evidence of a knife. There is not. Evidence. It's unfortunate that we've learned, thanks to dash cams and video, it's very unfortunate that we've learned that all too often, it's the same, it's just like, I smoked marijuana so I can search the car, respectfully. He had a gun. He said he had a knife. And these videos are coming up showing that these things are not true. It is disappointing. And I try to remind people, police officers are not inherently bad. Lawyers aren't inherently bad. The government's not inherently bad. But there are bad people. You do have evidence of record, or at least you have the police report indicating that the knife was admitted into evidence, and you have references to the fact that the knife was examined for usable prints. You're absolutely correct, it wasn't produced before the district court. But at least it's my understanding that it was admitted into evidence. My response to that is similar to the planting of contraband. I'm not suggesting... I'm really not arguing with you about... Your argument now is going more to where did the knife come from, not the existence of the knife. Yes, the admission is... Yes, Justice Duncan. The admission is, he had a knife, he tried to stab a police officer, he refused to drop it. And if that's contested, and a knife shows up, and the jury is not required to believe that, that they could clearly find in the estate's favor on this case. This is summary judgment, all inferences of... Reasonable inferences in faith of the non-moving party, I thought. They're supposed to be. That the Supreme Court case... And then we talked about somebody said they looked at a knife, they examined a knife, but it's not an evidence... What a Title VII case, for example, interesting how it goes where a person says, well, there are people who said that I heard animals, and we say, well, no, no, that's no evidence, it's not admissible. Who said that there was examination? What testimony? Is that affidavit? Is that all? I think that it's a result of self-serving statements by the officers in the city. There's nothing in evidence to support, for example, even the recovery of two knives. We lose all strictures here in Title VII, we don't at all. Oh my goodness, that's not admissible evidence. That's not an affidavit. And this court absolutely has an obligation to assist in governance of police policy. It does it in employment law, it does it with the ADA, the IMLA, employment law cases, these types of cases. This is where it comes from the top down, and we're pretty close to the top right here, justices. And this is a serious issue, and it really is about the training. If the deficiencies in the training, which is what the brothers speak to me about when they first came to my office, then you don't have officers approaching a man for allegedly violating municipal code, ending up dead, when they've tased him three times, they're on top of him on the ground, and they feel so threatened they had to shoot him 22 times. It is just difficult. It is really difficult to wrap your head around how that happens, and why he was done. I mean, clearly he's subdued. I have difficulty accepting anybody can represent that he is not clearly subdued in this video, and to suggest that we have to step back and pull out our firearms and shoot him 22 times because he was a threat to our lives. Thank goodness we have the video. I think it was sufficient to create a question of fact to survive summary judgment. I think it was clear that the question of omissions were dispositive, and it was air for the court to not consider the 36B factors, and even more of those factors considered, I don't want to go back and have an issue with the 36B factors. I think the record is clear that in light of the record in the case, they should not have been deemed admitted. There was no prejudice to the appellees, and the case should have been allowed to go to trial. Thank you, counsel. Thank you. We'll come down with your counsel and proceed to our next case.
judges: Roger L. Gregory, Allyson K. Duncan, Richard L. Voorhees